UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JOSE HERNANDEZ, HEBER MANZANARES, JUAN MAYORGA, NELSON BONILLA, ROMMEL GERSON CLAROS, SALVADOR GUERRA, SEBASTIAN RODRIGUEZ, and VICTOR SANCHEZ, *on behalf of themselves and others similarly situated*,

Plaintiffs,

-against-

JOSE MONTEIRO and JMJ PARTNERS, INC.,

Defendants.
---------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-06340 (OEM) (AYS)

ORELIA E. MERCHANT, United States District Judge:

On November 14, 2025, plaintiffs Jose Hernandez, Heber Manzanares, Juan Mayorga, Nelson Bonilla, Rommel Gerson Claros, Salvador Guerra, Sebastian Rodriguez, and Victor Sanchez ("Plaintiffs") commenced this putative class action against defendants Jose Monteiro and JMJ Partners, Inc. ("Defendants"), alleging violations of federal and New York labor laws. *See generally* Complaint, Dkt. 1 ("Complaint" or "Compl."). Before the Court is Defendants' fully briefed motion to dismiss Plaintiffs' ninth cause of action for fraudulent filing of tax returns under 26 U.S.C. § 7434 ("§ 7434" or "Section 7434"). *See* Notice of Motion, Dkt. 14 ("Motion"); Memorandum of Law in Support of Defendants' Motion to Dismiss, Dkt. 15 ("Mem."); Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint, Dkt. 17-3 ("Opposition" or "Opp'n");[1] Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss"), Dkt. 16 ("Reply").

For the following reasons, Defendants' Motion is denied.

[1] The Court notes that although Plaintiffs' Opposition refers to an amended complaint, the Complaint has not been amended.

## BACKGROUND[2]

Plaintiffs are former employees of Defendants, who operated a car wash, maintenance, and detailing center in Hempstead, New York, until July 2025. Compl. ¶¶ 7, 25. While employed, Plaintiffs were paid partially in cash and partially by check. *Id.* ¶¶ 51, 56, 168, 171. In the ninth cause of action of their complaint, Plaintiffs claim that Defendants violated § 7434 by fraudulently filing tax returns. *Id.* ¶¶ 167-72. Plaintiffs allege that the "off the book" cash payments were not included in their Internal Revenue Service ("IRS") Tax Form W-2s ("W-2"). *Id.* ¶ 171. Plaintiffs further allege that Defendants "knew they made cash payments to Plaintiff[s] and further knew those payments should have been included on the W-2's issued to Plaintiff[s] and reflected on Defendants['] income tax returns." *Id.*

## LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Challenges to a plaintiff's standing implicate the Court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016). Rule 12(b)(1) requires a district court to dismiss an action for lack of subject-matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Green v. Dep't of Educ.*, 16 F.4th 1070, 1075 (2d Cir. 2021) (per curiam) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Carter*, 822 F.3d at 56. Where, as here, a challenge to a plaintiff's standing is "facial," in other words, "based solely on the allegations of the complaint or the complaint and

---

[2] Unless otherwise noted, the following facts are drawn from the Complaint and are accepted as true for the purpose of ruling on Defendants' Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

exhibits attached to it," *Carter*, 822 F.3d at 56; *see* Mem. at 25-27; Reply at 2-4, "the plaintiff has no evidentiary burden" and "[t]he task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue,'" *Carter*, 822 F.3d at 56 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). The Court accepts as true all material allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Id.* at 57.

**B. Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).

Determining whether a plausible claim for relief is stated is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."

*Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp.*, 712 F.3d at 717 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Iqbal*, 556 U.S. at 678)).

**DISCUSSION**

Defendants contend that Plaintiffs' § 7434 claim should be dismissed for lack of standing under Rule 12(b)(1) or, alternatively, for failure to state a claim under Rule 12(b)(6) because § 7434 does not cover the underreporting of wages. Mem. at 2, 6. In opposition, Plaintiffs argue that "[i]n reading Plaintiffs' Complaint liberally, accepting all factual allegations as true, and drawing all reasonable inferences in [their] favor, it is clear that [they] have set forth sufficient allegations that would permit this Court to infer that the Defendants have fraudulently file[d] false tax returns under [§ 7434]." Opp'n at 1.

Section 7434 provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a); *see Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568 (2d Cir. 2011) (holding that the private right of action created by § 7434 applies only if a person willfully files a fraudulent information return and that "an allegation that a person intentionally failed to file a required information return does not state a claim under § 7434").

To state a claim under § 7434, a plaintiff must allege that "(1) the defendant issued an information return; (2) the information return was fraudulent; and (3) the defendant willfully

issued the fraudulent information return." *Sarr v. VEP Assocs. LLC*, 22-CV-04386 (ENV) (MMH), 2024 WL 1251600, at *5 (E.D.N.Y. Mar. 25, 2024) (quoting *Castro v. Hyper Structure Corp.*, 21-CV-1391 (ENV) (JRC), 2022 WL 2467242, at *8 (E.D.N.Y. Mar. 7, 2022)); *see also Pacheco v. Chickpea at 14th St. Inc.*, 18 Civ. 6907 (JMF) (GWG). 2019 WL 2292641, at *4 (S.D.N.Y. May 30, 2019) (noting that a § 7434 claim may only be brought "where there is a falsehood made to the IRS with respect to payments made to the plaintiff bringing the action"), *report and recommendation adopted*, 2019 WL 3749318, at *2 (S.D.N.Y. Aug. 8, 2019). Section 7434 defines "information return" as any statement described in 26 U.S.C. § 6724(d)(1)(A) ("§ 6724(d)(1)(A)" or "Section 6724(d)(1)(A)"). *See* 26 U.S.C. § 7434(f). Section 6724(d)(1)(A) lists different types of statements that qualify as "information returns," including the annual W-2 form. *See* 26 U.S.C. § 6724(d)(1)(A)(vii); *Shang Zhong Chen v. Kyoto Sushi, Inc.*, 15-CV-7398 (DLI) (JO), 2017 WL 4236556, at * 6 (E.D.N.Y. Sep. 22, 2017).

As noted by Defendants, "there does not appear to be any decision from the Second Circuit – or indeed, from any other Circuit Courts – squarely addressing the particular issue raised by this motion: whether Section 7434 covers claims of alleged underreporting of wages on an information return." Mem. at 6. Nonetheless, the conduct alleged falls under the plain language of the statute. Specifically, Plaintiffs allege that: (1) Defendants issued an information return—their income tax returns and the W-2s that they issued to Plaintiffs filed thereto; Compl. ¶¶ 169-71; (2) the information contained in the information return was fraudulent, in that the W-2s inaccurately stated the wages Plaintiffs earned because "[t]he wages Defendants paid 'off the book' in cash to Plaintiff[s] were not included in the wages identified in the . . . W-2;" *Id.*; and (3) Defendants willfully issued the fraudulent information return, because "Defendants knew they made cash payments to Plaintiff[s] and further knew those payments should have been included on the W-

2[s] issued to Plaintiff[s] and reflected on Defendants['] income tax returns;" *see Id.* ¶¶ 171-72; *see Hernandez v. Prime Structure, Inc.*, 23-CV-09487 (NCM) (LKE), 2025 WL 1786909, at *10 (E.D.N.Y. June 27, 2025) (finding allegations that defendants knowingly submitted information returns reflecting only the wages paid to plaintiff by check and omitting those paid to him in cash were sufficient to establish a violation of § 7434). Nevertheless, Defendants argue that these allegations fail to state a claim for relief because the fraudulent information submitted to the IRS reported that Plaintiffs were paid less, rather than more, income. Mem. at 2-7.

Defendants rely on *Pacheco* to support the proposition that § 7434 is applicable only in scenarios involving alleged over-reporting of Plaintiffs' wages that result in additional tax liability. 2019 WL 3749318, at *1; Mem. 3-7. However, not only is *Pacheco* not binding authority on this Court, but Defendants' reliance on *Pacheco* is also misplaced, and conflates under-reporting of payments with the failure to report payments altogether. *Pacheco* concerned an outright failure to submit an information return, rather than submitting fraudulent, inaccurate information regarding a particular plaintiff's wages. 2019 WL 2292641 at *4. There, the defendants reported the wages of some, but not all, of their employees. *Id.* The defendant omitted income for several employees, including the plaintiff. *Id.* The court found that omitting the full amount of one employee from a Form 941 was equivalent to failure to submit a tax form, which is not actionable under the Internal Revenue Code ("IRC"). *Id.*; *see also Francisco v. NYTex Care, Inc.*, 19-CV-04606 (PKC) (ST), 2019 WL 6716634, at *2, *4 (E.D.N.Y. Dec. 10, 2019).

Here, Defendants are alleged to have affirmatively submitted information returns as to Plaintiffs, containing inaccurate, fraudulent information. Specifically, Plaintiffs allege that Defendants paid all eight Plaintiffs in cash, "off the books," without a check or paystub, and did not include those cash wages in Plaintiffs' W-2 forms, which Defendants filed with the IRS in

connection with their income tax returns. Compl. ¶¶ 168-71. Plaintiffs further allege that Defendants knew those cash payments should have been included on the W-2s issued to Plaintiffs and reflected on Defendants' income tax returns. Compl. ¶ 171; *see Hernandez,* 2025 WL 1786909, at *10; *see also Cano v. Tremson Recycling LLC*, 24-CV-01612 (JGK) (RWL), 2025 WL 964552, at *12 (S.D.N.Y. Mar. 14, 2025); *Rosario v. Fresh Smoothies LLC*, 20-CV-05831 (LJL), 2021 WL 5847633, at *6 (S.D.N.Y. Dec. 9, 2021).

Defendants also rely on *Francisco,* which the *Francisco* court described as "a case with almost identical facts" as *Pacheco*. *Francisco*, 2019 WL 6716634, at *3. However, *Francisco* is distinguishable because it concerned an outright failure to submit an information return, rather than submission of fraudulent, inaccurate information regarding a particular plaintiff's wages. *See id.* Unlike Plaintiffs here, the *Francisco* plaintiff was paid entirely in cash and alleged that the defendants omitted the full amount of the plaintiff's wages from Form 941, which is not actionable under the IRC. *See id.* at *2-4.

Defendants' reliance on *Katzman v. Essex Waterfront Owners LLC* fares no better. There, the Second Circuit assessed what is required to state a claim for relief under § 7434. *Katzman*, 660 F.3d at 567. Focusing on the plain text of the statute while acknowledging its legislative history, *id.* at 568-69, the *Katzman* court held the private right of action created by § 7434 applies only if a person *willfully files* a fraudulent information return. *Id.* at 568 ("[A]n allegation that a person intentionally *failed to file* a required information return does not state a claim under § 7434") (emphasis added). Further, the *Katzman* court reasoned that this conclusion is consistent with the "overall statutory scheme," in that 26 U.S.C. § 6721(a)(2)(A) of the IRC establishes penalties for failure to file an information return and 26 U.S.C. § 6722 of the IRC establishes penalties for failure to furnish payee statements. *Id.* at 569 ("These provisions, however, do not

create a private right of action. It is therefore apparent that Congress knows how to distinguish between the failure to file an information return and the willful filing of a fraudulent information return."). "Therefore, the central question when determining whether a Section 7434 violation has been committed is whether an information return was actually submitted, and if so, was it fraudulent." *Hernandez*, 2025 WL 1786909, at *10.

To the extent Defendants point to other district court cases from other circuits that have opined on this issue, the Court does not find these cases to be persuasive. The *Queen v. Zefco Inc.* court rested its exclusion of underreporting on an unduly narrow account of the legislative purpose rather than a limitation expressed in § 7434's text. 8:19-CV-2966-TMC, 2020 WL 9350977, at *5 (D.S.C. June 18, 2020). Indeed, the *Zefco* court itself acknowledged that "it is equally reasonable to read § 7434 as expressing Congress's intent to penalize the reporting of any incorrect statement of income," yet confined the statute's protective purpose to overreporting based on the particular abuse that prompted its enactment. *Id.* But the legislative history quoted in *Zefco* itself describes fraudulent returns filed by persons "intent on either defrauding the IRS or harassing taxpayers"—language broader than just inflated income reports designed to harass their recipients. *Id.* Nor does the existence of civil and criminal penalties for underreporting explain why Congress's separately enacted private remedy should exclude that conduct. *See id.* at *6.

Relying on *Zefco*, the *Balle-Tun v. Zeng & Wong, Inc.* court concluded that "filing fraudulent information returns underreporting an individual's income was not the harm Congress enacted § 7434 to prevent;" however, it supplied no independent textual basis for that restriction. 21-CV-03106-NRN, 2022 WL 1521767, at *6 (D. Colo. May 13, 2022). Neither decision persuasively explains why "payments purported to be made" encompasses a knowingly inflated payment amount but excludes a knowingly understated one. *See Zefco*, 2020 WL 9350977, at *5

("While 'purported' might suggest Congress's intent to bar the filing of an information return reporting *more* income than actually received, it is equally reasonable to read § 7434 as expressing Congress's intent to penalize the reporting of *any* incorrect statement of income.") (internal quotations omitted). Here, by reporting only check payments while deliberately omitting cash payments, Defendants allegedly falsified the amount paid—the very subject of the information return. Nothing in § 7434's text justifies importing an overreporting-only limitation into the statute.

Here, Plaintiffs allege that: (1) Defendants issued an information return—their income tax returns and the W-2s they issued to Plaintiffs filed thereto; Compl. ¶¶ 169-71; (2) the information return was fraudulent, in that the information contained in the W-2s inaccurately stated the wages Plaintiffs earned because "[t]he wages Defendants paid 'off the book' in cash to Plaintiff[s] were not included in the wages identified in the . . . W-2;" *Id.*; and (3) Defendants willfully issued the fraudulent information return, because "Defendants knew they made cash payments to Plaintiff[s] and further knew those payments should have been included on the W-2[s] issued to Plaintiff[s] and reflected on Defendants['] income tax returns;" *Id.* ¶¶ 171-72.

Accordingly, Plaintiffs have plausibly alleged a violation under § 7434, *see Hernandez,* 2025 WL 1786909, at *10, and Defendants' Motion to dismiss Plaintiffs' § 7434 claim is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to dismiss Plaintiffs' ninth cause of action for fraudulent filing of tax returns under 26 U.S.C. § 7434 is denied.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

October 16, 2026
Brooklyn, New York